IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,         )
                                )
v.                              )       No. 2:09-CR-045
                                )       No. 2:15-CV-271
SUNNAH MADDOX,                  )
                                )
              Defendant.         )

**MEMORANDUM OPINION**

Defendant Sunnah Maddox (Maddox) has filed a Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence based on allegations of ineffective assistance of counsel and prosecutorial misconduct [Doc. 1].[1]  The United States has filed a Response [Doc. 6].  After the United States filed its response, Maddox has filed since filed numerous supplements which not only supplement issues already raised but also bring forth new unrelated issues [Docs. 7, 8, 11].  The United States filed a Response to those supplements [Doc. 15].  Maddox then filed three more "supplements" [Docs. 17, 18, 19].  The matter is now ripe for disposition.[2]  For the reasons stated herein, Maddox's motion to vacate will be denied.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

Maddox was indicted in a multiple count and multi-defendant indictment charging him and others with a  variety of criminal offenses, to include conspiracy to manufacture 5 kilograms or

---

[1]  Unless otherwise indicated, docket references are to document numbers in Case Number 2:15-CV-271.

[2]  This memorandum opinion will only address Maddox's pending motions to vacate [Docs. 1, 7, 8, 11, 17, 18, 19].  It will not address Maddox's request for a new sentencing hearing under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  [Docket Number 2:09-CR-045, doc. 1115].

more of a mixture and substance containing a detectible amount of cocaine in violation of 21 U.S.C. § 841(b)(1)(A) (count 1); aiding and abetting others in the distribution of 500 grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B) (count 2); conspiracy to distribute marijuana in violation of 21 U.S.C. § 841(b)(1)(D) (count 3); aiding and abetting others in the distribution of marijuana in violation of 21 U.S.C. § 841(b)(1)(D) (count 4); conspiracy to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A) (count 5); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (count 6); aiding and abetting others in committing money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (count 13); possession of ammunition by a convicted felon in violation of 18 U.S.C.§ 922(g)(1) and 924(e) (count 16); retaliation against a witness in violation of 18 U.S.C. § 1513(b)(1) and (2) (counts 18 and 19); and conspiracy to engage in retaliation against a witness in violation of 18 U.S.C. § 1513(b)(1) and (2) (count 20).[3]

Maddox's counsel zealously represented Maddox throughout his representation. First, he filed a motion to dismiss [Case Number 2:09-CR-045, doc. 220], alleging that African-Americans "were systematically excluded from the grand jury that indicted him…." [*Id.*, pg. 1]. Counsel filed a motion to produce the current and historical information concerning grand jurors and grand juror forepersons [*Id.*, doc. 221]. He filed a motion for the release of grand juror names, where he requested the names, contact information, and race of all grand jurors for the last 30 years [*Id.*, doc. 225]. He filed a motion for a bill of particulars [*Id.*, doc. 250], a motion to exclude statements made by alleged coconspirators [*Id.*, doc. 251], a motion in limine to exclude the government from

---

[3] On May 12, 2009, the Grand Jury returned a indictment against Defendant [Case Number 2:09-CR-045, doc. 25]. That indictment was superseded on August 11, 2009 [*Id.*, doc. 49]. A second superseding indictment was returned on June 8, 2010 [*Id.*, doc. 266]. A third and final superseding indictment was returned on July 13, 2010 [*Id.*, doc. 398].

introducing testimony about the "meaning" of the contents of "certain writings/documents" [*Id.*, doc. 252], a motion to suppress, where he challenged the search warrant issued authorizing the search of his property [*Id.*, doc. 253], another motion to suppress [*Id.*, doc. 254], a motion to prohibit the use of transcripts [*Id.*, doc. 255], a motion to change venue [*Id.*, doc. 256], and a motion to suppress evidence obtained via wiretaps [*Id.*, doc. 257]. Counsel filed a second motion for the production of historical information regarding grand jurors [*Id.*, doc. 299], and a motion for separate trials on the various counts of the indictment [*Id.*, doc. 336]. The magistrate judge addressed all of these motions with either orders or reports and recommendations [*Id.*, docs. 310-328, 357, 387]. Maddox then appealed or filed objections to all the magistrate judge's orders and recommendations. The Court adopted the findings of fact and conclusions of law concerning the motions to suppress and the orders the magistrate judge entered [*Id.*, docs. 454, 455]. Maddox then filed another motion to suppress evidence obtained as a result of a traffic stop in Virginia that occurred May 25, 2005 [*Id.*, doc. 532]. The Court granted that motion, suppressing the evidence seized at that stop [*Id.*, doc. 581]. Maddox then filed multiple *ex parte* motions [*Id.*, docs. 599-601] which were all granted [*Id.*, docs. 603-05].

Maddox proceeded to a jury trial on November 29, 2010 [*Id.*, doc. 572, Minute Entry]. The trial lasted 14 days, concluding with a guilty verdict on all counts [*Id.*, doc. 634]. The United States filed an information to establish two prior felony drug convictions pursuant to 21 U.S.C. § 851 [*Id.*, docs. 159, 823]. Maddox objected to this enhancement [*Id.*, doc. 819]. Because of his two prior felony drug convictions, Maddox faced a minimum mandatory term of imprisonment of life in prison. *See*, *e.g.,* 21 U.S.C. § 841(b)(1)(A). A presentence report was prepared and consistent with the enhancement, indicated Maddox faced a mandatory term of imprisonment of life. (PSR ¶ 99). Without the statutory enhancements, the report indicated he faced a guideline

range of 360 months to life based on an offense level of 40 and a criminal history category of IV (PSR at ¶¶ 100). After disposing of any objections to the PSR and the § 851 notice, the Court conducted a sentencing hearing on September 26, 2011 [*Id.*, doc. 836, Minute Entry]. The Court sentenced Defendant to a total term of imprisonment of life on counts 1, 2 and 5, and a concurrent term of 120 months imprisonment as to each of counts 3, 4, 6, 13, 16, 18, 19, and 20 [*Id.*, Doc. 838, *Judgment*].

Maddox, as did six other co-defendants, filed a timely notice of appeal [*Id.*, doc. 839]. On appeal, Maddox challenged his conviction and sentence. *United States v. Miller, et al.*, 562 F. App'x 272 (6th Cir. 2014). The Sixth Circuit found Maddox's challenges to be without merit and affirmed his conviction and sentence. *Id.* On April 28, 2014, the Sixth Circuit issued its mandate [*Id.*, doc. 931]. On October 8, 2014, the United States Supreme Court denied Maddox's writ of certiorari [*Id.*, doc. 965]. On October 5, 2015, Maddox filed the present Motion to Vacate under 28 U.S.C. § 2255 [Doc. 1].

## II.     STANDARD OF REVIEW

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); s*ee also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir. 1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir. 1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

## III. MADDOX'S MOTIONS TO VACATE

### A. Maddox's initial motion to vacate filed October 5, 2015 [Doc. 1].

On October 5, 2015, Maddox timely filed a motion to vacate pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence in this case. The first issue he alleges is that he received ineffective assistance of counsel at the pretrial stage [Doc. 1, p. 4]. For this issue, he claims that his counsel was ineffective for the following reasons: (1) counsel failed to "conduct an adequate independent pretrial investigation inclusive of failure to research the applicable law … and interview witnesses;" and (2) counsel failed to "communicate and properly advise Maddox of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial, as well as his maximum potential sentence he faced if he was convicted at trial…." [Doc. 1, p. 4].

Maddox next claims that he received ineffective assistance of counsel at trial [Doc. 1, p. 5].  Here he claims his counsel failed to prepare for trial and failed to provide "any kind of trial [strategy] and/or legal defense on behalf of Maddox."  [Doc. 1, pg. 5].  For his third issue, Maddox alleges prosecutorial misconduct.  Here he claims the government knowingly elicited false testimony, failed to provide Jencks Act and *Brady/Giglio* material, and made improper remarks during closing argument [Doc. 1, p. 6].  For his fourth issue, Maddox claims he received ineffective assistance of appellate counsel.  Here he claims his counsel failed to raise "other stronger meritorious issues…."  [Doc. 1, p. 8].  Specifically, he claims his appellate counsel should have argued the sufficiency of the evidence, prosecutorial misconduct, and raised an issue pertaining to a memorandum drafted by Eric Holder on "charging mandatory minimum sentences and recidivist enhancements in certain drug cases."  [Doc. 1, p. 8].

**B.     Maddox's "Supplement in support of motion under 28 U.S.C. § 2255" [Doc. 7].**

On August 16, 2016, Maddox filed a supplement in which he reasserts his prior argument that the government failed to provide Jencks Act and *Brady/Giglio* material [Doc. 7, p. 1].  Maddox then titles a section of this supplement "Newly Discovered Evidence" [Doc. 7, p. 3].  For this claim he states the following:

> A report based on an interview of Jamie Rush by Ronnie Cooper's defense team revealed that Rush had in fact told the government that Cooper (an alleged co-conspirator of Maddox) had nothing to do with the conspiracy alleged in U.S. v. Maddox.  This exculpatory evidence was not included in Rush's DEA 6 or anywhere else in the *Brady* material.

[Doc. 7, p. 3].  Maddox also claims he filed a freedom of information request for all "302s, DEA 6s, investigative reports, etc." and was advised that those were not subject to disclosure.  *Id.*

**C.      Maddox's "Supplement in support of Motion under 28 U.S.C. § 2255" [Doc. 8].**

On October 28, 2016, Maddox filed another supplement where he alleges "Newly Discovered Evidence" again.  [Doc. 8, p. 1].  Under this section, Maddox alleges that "Bill Mitchell, a former Johnson City, TN drug task force officer" conspired with the FBI agents and others to investigate Maddox.  Here he claims that Mitchell testified that he had monitored a controlled buy from Lee Carr, who is Maddox's cousin and co-defendant, but that that the drugs from that purported drug buy were not introduced at the trial.  He also contends that Mitchell lost his job "due to drug use." [Doc. 8, p. 2].  He claims this "taints the credibility of the entire investigation." *Id.*

**D.      Maddox's December 5, 2016 "Supplemental Memorandum of law" [Doc. 11].**

On December 5, 2016, Maddox filed a third supplement to his § 2255 motion [Doc. 11].  In this supplement, he raised for the first time the issue of "whether [his] career offender enhancement and life sentence was [sic] applied wrongfully…" [Doc. 11, p. 1].  He also alleged he received ineffective assistance of counsel pre-trial for the following reasons: (1) counsel failed to challenge his prior convictions; and (2) failed to negotiate a favorable plea.  *Id.*

On the first issue, he contends that "his prior conviction of attempted criminal possession of a controlled substance in the 5th degree … is not a controlled substance offense under the guidelines." [Doc. 11, p. 4].  Under the guidelines, he argues that attempted possession is not possession [Doc. 11, p. 6].  He claims his counsel "failed to investigate the application (sic) state and federal laws … with regard to his challenge of Maddox's prior convictions." [Doc. 11, p. 7].  He claims that had his counsel challenged his prior convictions, he "would not have been charged as a career offense" and "a plea-bargain would have been favorable as opposed to a trial," and he would have only been facing a 240-262 months of imprisonment.  [Doc. 11, p. 8].

**E.     Maddox's December 18, 2017 "Supplemental Brief" [Doc. 17].**

On December 18, 2017, Maddox filed another supplemental brief in support of his § 2255 motion.  In this "supplement" he provides details of his claim that the "prosecutor presented false testimony."  [Doc. 17, p. 2].  Maddox argues that the DEA-6 report of Shawn McGirt indicates that McGirt told Agent Vicchio that Maddox had "consigned him 4 ounces of crack cocaine." [Doc. 17, p. 3].  But Maddox claims that McGirt testified that he was given 500 grams (citing pages 57-61 of trial transcript).  Maddox claims that Agent Vicchio testified that Maddox had "fronted" the drugs to McGirt, and that McGirt had not purchased them.  According to Maddox, this shows the government knew McGirt was lying to the jury.  Maddox also claims that the government asked McGirt about buying 500 grams of crack cocaine from Maddox, but Maddox says McGirt claimed he had not been to Tennessee between 2003 to 2007[4] [Doc. 17, p. 4].  Maddox argues that the government "acknowledges [that] McGirt tells Agent Vicchio he had been given four ounces, yet [the government] solicited testimony from McGirt to the contrary…."  [Doc. 17, p. 5].

**F.     Maddox's June 4, 2018 "Supplemental brief" [Doc. 18].**

On June 4, 2018, Maddox filed yet another supplement in which he contends that the drugs found in the Toyota Camry[5] on May 7, 2009 should have been suppressed, claiming the search of the car "was executed in bad faith."  [Doc. 18, p. 2].  He argues that in *Byrd v. United States,* the United States Supreme Court held that those who lawfully control property have a legitimate expectation of privacy by virtue of their right to exclude others.  He argues that his counsel was

---

[4] Maddox acknowledges his trial attorney noted this discrepancy and cross-examined Agent Vicchio about it.  Then, Maddox notes, "Agent Vicchio suddenly remembered McGirt saying he'd only got 4 ounces" from Maddox.  [Doc. 17, p. 5].

[5] Maddox describes the vehicle as a Camry in his motion, but the trial testimony was that it was a Toyota Avalon [Case Number 2:09-CR-045, doc. 677, *Morgan Bennett testimony*, pg. 2009-10].

ineffective "for not moving to suppress evidence illegally found in the rental car…." [Doc. 18, p. 4].

Also on June 4, 2018, Maddox filed an "Amendment to Supplemental Brief" [Doc. 19]. Here Maddox asks that all wiretaps be suppressed "on the grounds that Agent Vicchio's application for the initial and subsequent wiretaps was based on sworn testimony that was fraudulent and also perjurous (sic)" [Doc. 19, p. 1]. As Maddox had argued before, he claims that McGirt had told Agent Vicchio that McGirt had given Maddox four ounces of crack cocaine, but that at trial Vicchio testified that McGirt had given Maddox 500 grams.

## III.   ANALYSIS

### A.   Maddox's Motion to Vacate [Doc. 1].

Maddox's initial motion to vacate is broken down into four categories: (1) ineffective assistance of counsel at the pretrial stage; (2) ineffective assistance of counsel at trial; (3) prosecutorial misconduct; and (4) ineffective assistance of counsel of appellate counsel. Throughout his motion, however, he merges facts that pertain to one category into another category. The Court will address each claim in the order raised by Maddox and will address the issues that have been properly raised.

### 1.   Maddox's ineffective assistance of counsel claim at pretrial.

#### a.   Maddox's claim that his counsel did not conduct an adequate investigation pretrial and interview defense and government witnesses.

Maddox claims he received ineffective assistance of counsel at the pretrial stage. He claims that his attorney failed "to check phone records" [Doc. 2, *Maddox's memorandum of law,* p. 13]. He claims his attorney "failed to conduct any kind of independent pretrial investigation." *Id.* He also claims his attorney failed to interview any witnesses and cites to the witness Morgan Bennett as an example. Here, he claims Bennett was Rush's girlfriend who rented a vehicle in which over

a kilogram of cocaine was discovered by law enforcement.  *Id.*  Maddox claims that all "the girls who testified against [him] that had anything to do with Rush were romantically involved with him and [were] abused by him and they testified at trial … out of fear of Rush."  *Id.*  Had his attorney investigated the case, he would have known of these "facts" and used them at trial.

*Strickland* imposes upon an attorney "'the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.'"  *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)).  An attorney must perform a reasonable investigation of witnesses and a failure so to do, where prejudice results, can constitute ineffective assistance.  *See also Noble v. United States*, No. 2:10-CR-51-JRG, 2018 WL 4441240, at *12 (E.D. Tenn. Sept. 17, 2018).

Although Maddox generally complains that his counsel failed to investigate the case, that is undercut by his lack of specificity and by the number of motions his counsel filed in his defense. By any standard, his counsel thoroughly investigated this case and challenged the admissibility of all the evidence.  The only specific witness he claims should have been interviewed was Morgan Bennett. But Maddox called her to testify in the case.  He does not identify any other witnesses or their testimony that he claims should have been interviewed and called in his defense.  "The testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted). "A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation marks and citation omitted).

Maddox fails to identify what his counsel should have done differently and what difference it would have made. *See e.g., United States v. Robinson*, 307 F. App'x 907, 911 (6th Cir. 2009) (declining to review a claim that counsel was ineffective for not conducting further investigation because the record did not show what information could have been further investigated, what that investigation would have shown, or how it might have alternated the outcome). As more fully set forth in the evaluation of trial counsel section of this memorandum opinion, Maddox has failed to demonstrate that his counsel rendered ineffective assistance of counsel regarding pretrial investigation.

### b.    Failure to check phone records.

Maddox claims his counsel failed to "check phone records." [Doc. 2, p. 13]. Maddox fails to identify any specific phone call or record that he claims should have been discovered or might have in any way affected the outcome of this case. He does not identify any phone records that he claims his counsel failed to review. He fails to explain how any of the phone records would have even been useful to his defense. In fact, the claim that his counsel failed to review phone records is inconsistent with what he advised that court that he and his attorney had reviewed "thousands and thousands" of transcripts of recorded conversations. [Case Number 2:09-CR-045, doc. 677, p. 2132]. His failure to identify what evidence should have been discovered is fatal to this aspect of his ineffective assistance of counsel claim. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (noting a § 2255 motion requires "objective evidence" and finding self-serving testimony inadequate to show prejudice under *Strickland*). The Court finds that Maddox had failed to demonstrate that he received ineffective assistance of counsel for failure to review phone records.

### c.    Failure to study background and DEA 6 reports.

Maddox next claims that his counsel was ineffective for not studying background and DEA 6 reports. Here he claims that his counsel failed to study DEA-6 reports that he could have used to

impeach Shawn McGirt. The Court finds this issue to be without merit, but will address the substance of this claim in the evaluation of trial counsel as it pertains directly to what his counsel did at trial.

    **d.    Maddox's claim that his counsel failed to communicate and advise him appropriately.**

Maddox claims his counsel failed to communicate and advise him properly [Doc. 2, p. 14]. Here he claims that his counsel should have negotiated "a plea agreement with the government wherein they would not file the § 851 enhancement, his sentence would have been significantly less harsh." [Doc. 2, p. 15]. He claims he was "wholly uninformed of the relevant circumstances and likely consequences if he pled guilty or proceeded to trial." [Doc. 2, p. 15]. Notwithstanding that, Maddox admits that his counsel advised him "that he would face a life sentence regardless of whether he went to trial or pled guilty. [His counsel] did attempt to challenge Maddox's prior convictions to no avail." [Doc. 2, p. 16].

For several reasons, this issue is without merit. First, Maddox claims his counsel failed to communicate with him properly about his sentencing exposure. Yet he acknowledges that he knew what his sentencing exposure was. He stated that he knew that the only way for him to have received something less than the mandatory life term of imprisonment was for his counsel to have (1) negotiated "a favorable plea agreement, which would not include the § 851 enhancement;" (2) win at trial; or (3) cooperate with the government "which Maddox would not entertain" [Doc. 2, p. 16]. He understood exactly what his exposure was and what was on the line if he were not successful at trial. Thus, his claim that his counsel failed to advise him of his sentencing exposure is inconsistent with the record.

Second, his claim that he would have pled is undercut by his own testimony at trial where he testified he had nothing to do with the conspiracy. Maddox testified that he had absolutely

nothing to do with a conspiracy to distribute crack cocaine, that he was not involved with the co-defendants and witnesses who testified that he was essentially the drug-kingpin. In fact, Maddox wrote several letters while awaiting trial that he intended to beat the charge [Case Number 2:09-CR-045, doc. 677, p. 1635-44]. For him now to claim that he was actually interested in pleading is disingenuous at best.

Third, Maddox cannot show that his counsel's performance was deficient merely because he failed to obtain a favorable plea agreement on his behalf. Maddox has no right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561, (1977) ("There is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial"); *United States v. Martin*, 516 F. App'x 433, 443 (6th Cir. 2013). Here, although Maddox baldly asserts that he would have accepted a plea deal to a lesser sentence had his counsel obtained one, he has not alleged that the government offered one or had any intention to offer one. His counsel cannot be deemed deficient for not obtaining that which is not obtainable. He presented no evidence that the government was amenable to negotiate a plea or that it even offered a plea. Because Maddox has failed to establish deficient performance as to his claim of ineffective assistance of counsel based on either a failure to communicate or a failure to obtain a plea agreement, he is not entitled to relief on that claim.

2. **Maddox's claim that he received ineffective assistance of counsel at trial.**

   a. **Failure to prepare for trial and provide "any kind of trial strategy and/or legal defense."**

Maddox claims his trial counsel was ineffective for failing to prepare for trial, for not providing "any kind of trial strategy or legal defense…." [Doc. 2, p. 17]. He claims his counsel was "unprepared for cross examination of witnesses" and that his counsel could have impeached the testimony of various government witnesses, such as McGirt, Ebberts, and Bennett, if he had been prepared. *Id.*

That Maddox claims that his counsel failed to prepare for trial is a remarkable claim given the pretrial motions his counsel filed attacking every aspect of the government's case. One can see just by reviewing the motions Maddox's counsel filed to demonstrate this claim is without merit. But more importantly, Maddox fails to identify what else his counsel should have done. He claims his counsel should have reviewed DEA-6 reports to cross examine McGirt, Ebberts, and Bennett to show their inconsistencies. But he fails to identify any of those purported inconsistences.

The one alleged inconsistency he raises pertains to Shawn McGirt and his DEA-6 report. Here he claims that McGirt's DEA-6 report reveals that McGirt told Agent Vicchio that Maddox "consigned him 4 ounces of crack cocaine." Maddox claims that at trial McGirt contradicted this statement by testifying that Maddox gave him 500 grams of cocaine [Doc. 17, p. 3]. "Consigned" versus "gave." "Four ounces" versus "500 grams." Mere inconsistencies in testimony by government witnesses will not be sufficient to set aside a conviction. In fact, while the use of perjured testimony would entitled Maddox to a new trial, what he presents here does not. *See, e.g., United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir. 1994)("mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony") (citations omitted).

What also undercuts Maddox's claim here is that his counsel cross-examined McGirt on the inconsistencies between his trial testimony and what he said in the DEA-6 report. McGirt testified that in 2007 he met with Maddox and discussed with him about obtaining crack cocaine for the purpose of distributing it in Massachusetts [Case Number 2:09-CR-045, doc. 677, p. 59]. McGirt testified that he received 500 grams of crack cocaine from Maddox at that time and he took it back to Massachusetts [*Id.,* p. 60]. He also testified that he purchased crack cocaine from Maddox on "several occasions" but the exact amount varied from 500 grams to a few ounces [*Id.*, p. 60].

McGirt also testified that in February 2008, when Agent Vicchio and other law enforcement searched his girlfriend's house, they found about 50 grams of crack cocaine, which McGirt admitted was his and which he claimed he had obtained from Maddox. [*Id.*, p. 62-64]. Thus, he testified to multiple dealings with Maddox regarding the distribution of cocaine.

Maddox's counsel asked McGirt the following:

Q.     And you just said a minute ago that [Maddox] had given you 500 grams of cocaine back in, at the end of '07, but you told the officers that you'd gotten four ounces?  Do you remember telling them that?

A.     No.

Q.     Alright.  Well, four ounces is nowhere near 500 grams, is it?

MR. REEVES:     Your Honor, I'm going to object. Once again, he's cross examining him with an officer's report, not his statement.

THE COURT:     Sustained.

[Case Number 2:09-CR-045, doc. 677, p. 88-89]. Maddox claims his counsel was ineffective because he failed to ask McGirt about his statement to the DEA.  But that is exactly what he did at trial.  Counsel cannot be ineffective for doing exactly what Maddox claims he wanted him to do. *See, e.g., United States v. Huerta*, No. 2:08-CR-102(1), 2017 WL 579507, at *5 (E.D. Tenn. Feb. 13, 2017) (6th Cir. Aug. 24, 2017) ("His counsel cannot be constitutionally ineffective for performing in exactly the manner that [defendant] claims he should have…. [Defendant] has presented no basis for the Court to find his counsel was deficient under *Strickland*, as counsel did everything that [defendant] claims that he should have.").

Maddox claims his counsel lacked a legal strategy.  Yet he fails to identify what other strategy he could have or should have pursued.  In fact, part of Maddox's strategy was to attack the credibility of the witnesses who testified against him, which his counsel ably did, and then play

offense by testifying that he was not involved in the distribution of crack cocaine or powder cocaine, did not launder any money, and that he did not threaten Rush for testifying against him. All of that happened at his trial, and all of that was rejected by the jury. But the strategy to highlight weaknesses in the government's case, attacking the credibility of the government witnesses, showing their bias, and Maddox himself testifying was a reasonable strategy. Maddox has not proposed any other reasonable alternative. The Court finds that he has not shown that he received ineffective assistance of counsel in this regard.

### b. Maddox's decision to testify in his own defense.

Maddox next claims that he should not have testified in his own defense. But the decision to testify was his choice, not his counsel's. *See, e.g., United States v. Webber,* 208 F.3d 545, 550-51 (6th Cir. 2000). A defendant's right to testify at trial "is a constitutional right of fundamental dimension and is subject only to a knowing and voluntary waiver by the defendant." *United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000).

Maddox never indicated he did not wish to testify. He never advised the Court that he was being called to the witness stand against his own better judgment. In fact, just the opposite occurred. Maddox willingly testified that he had no any criminal culpability at all except that he sold marijuana. Contrary to the weight of the evidence, he was adamant he had no knowledge of any cocaine sales [Case Number 2:09-CR-045, doc. 664, p. 25-28, 36]. Concerning McGirt's testimony that Maddox had given him money to purchase cocaine, Maddox claimed he had only loaned him money to help McGirt "get on his feet." It was not for anything to do with drugs [*Id.*. p. 11-12]. In fact, Maddox denied ever engaging in any drug deals with McGirt [*Id.*, p. 14]. He also denied knowing other players in the conspiracy, like Rick Saults and Joe Campbell, both of whom testified against him. [*Id.*, p. 15]. He denied selling cocaine to Kim Campbell. *Id.* Although Tonya Ebberts testified that she and Maddox would caravan to Atlanta, park in a garage, and then

Maddox would exchange money for cocaine at that location, Maddox testified that he never went to a garage; claiming instead that "[w]hen we went to Atlanta, I went my way, they went their way." [*Id.*, p. 48]. Maddox testified when he threatened Rush, he did not know Rush was cooperating [*Id.*, p. 61-62]. He claimed he only threatened him for reasons other than in retaliation for Rush's cooperation. To be sure, the jury rejected Maddox's story about his innocence, just like this Court did in denying his motion for acquittal and just like the Sixth Circuit did when it addressed the sufficiency of the evidence arguments raised by the co-defendants.

A criminal defendant has a "fundamental constitutional right" to testify in his own behalf, subject only to a knowing and voluntary waiver. *Rock v. Arkansas*, 483 U.S. 44, 53 n. 10 (1987) (citations omitted). A claim that counsel failed to explain the benefits of testifying does not state a claim of ineffective assistance of counsel. *See Walker v. United States*, No. 99–4105, 2000 WL 1871681 (6th Cir.2000). Maddox exercised that right, and the decision to testify was his and his alone. His counsel was not ineffective for permitting him to exercise his constitutional right to present his side of the story. Maddox has failed to demonstrate ineffective assistance in this regard.

### c. Maddox's claim that his counsel was ineffective in cross-examining Taneka Ebberts.

Maddox next claims that his counsel was ineffective for failing to properly cross-examine Ebberts about her knowledge about Maddox and his purported drug activites. Although Maddox claims his attorney failed to properly cross-examine Ebberts, the trial record tells a different story. Maddox argues that Rush testified that Maddox gave Ebberts money to buy drugs on a drug run to Atlanta, but claims that Ebberts contradicted that testimony by testifying she hardly knew Maddox. But the issue is not how well Ebberts knew Maddox, but what she did for Maddox in the conspiracy. On that point, she testified unequivocally that Maddox was involved in traveling to Atlanta and bringing cocaine back to Tennessee. Here is an excerpt from Ebberts' testimony:

Q.      Okay. Did you learn that, … in talking with and in being with Jamie Rush at times, that he and Mr. Maddox were taking trips to Atlanta, Georgia to bring quantities of cocaine back to Tennessee?

A.      Yes.

Q.      Okay.  And how did you learn that?

A.      Because I was involved in bringing the drugs back.

Q.      Okay. Did you agree to help in doing that?

A.      Yes.

Q.      Okay. And how so?

A.      I was the one who had the money in the car and would go to Georgia and then come back with the drugs.

Q.      How many total trips do you think that you made for Mr. Rush and Mr. Maddox to Atlanta to bring cocaine back to Tennessee?

A.      It was three or four times.

…

Q.      Now who would go on these trips?

A.      Me and Jamie and Maddox.

…

Q.      Okay. Would you all drive together in one car or possibly several?

A.      I would go in my own car, and Maddox and Jamie would go in their car.

…

Q.      Now the next day what would happen when it was time to pick up the drugs?

A.      We would leave and I would follow them, and we would pull in a garage,

18

and Maddox would get out of the car and get the bag out of the trunk and go into a building and come out and put the bag back in the trunk, and then I would go home.

…

Q.      On the three to four occasions that you went to Atlanta to drive for Mr. Maddox and Mr. Rush, did Mr. Maddox, was he the one that always went inside to get the drugs?

A.      Yes.

Q.      And again, he is the one that went to, inside your trunk to get the money out, correct?

A.      Yes.

Q.      And then came back out with the drugs?

A.      Yes.

Q.      And when he came back out with the drugs what did he do with them?

A.      Put them in the trunk.

[Case Number 2:09-CR-045, doc. 677, p. 399-407].

Maddox's counsel did the best that could be done in addressing this incredibly damaging testimony from Ebberts.  His counsel cross-examined Ebberts about whether she even knew what was in these bags that she claimed Maddox had placed in her trunk [*Id.*, p. 435].  She said she was not positive because she did not see what was in them.  He questioned her about whether she even knew Maddox and attacked her credibility based on her relationship with Rush.  *Id.* at 435-451. Maddox cannot show that his counsel rendered ineffective assistance pertaining to his handling of Ebberts at trial.  In fact, Maddox does not propose any other way in which Ebberts' testimony could be handled.  This issue is without merit.

**d. Maddox's claim that his counsel did not properly cross-examine Morgan Bennett.**

Maddox specifically claims that he received ineffective assistance of counsel at trial and pretrial based on the failure to interview and question Morgan Bennett. Contrary to Maddox's contentions, his counsel actually called Morgan Bennett as a witness who testified on Maddox's behalf:

Q.      Now, Ms. Bennett, … I guess your relationship to Jamie Rush, you're his girlfriend?

A.      Yes, Sir.

Q.      Currently, and have been for some time?

A.      Yes, Sir.

Q.      At some point, I guess April or May of last year, did you rent a white Toyota Avalon for him?

A.      Yes, Sir.

…

A.      No, not for him, for myself.

Q.      Oh okay. Did, I don't, do you even know Sunnah Maddox?

A.      I know who he is, but I don't know him. Of him, I know who he is, but that's about it.

Q.      … Did he have any role at all, whatsoever, in the renting of that Toyota Avalon?

A.      No, Sir.

…

Q.      Now, … during the time you've known Mr. Rush, has he ever hit you?

A.     No.

[*Id.*, p. 2009-10].  Bennett's testimony that she did not know Maddox and that she had rented the Toyota Avalon for herself supported his theory of the case that he was not involved in the cocaine conspiracy, and was not connected to the Toyota where the kilogram and a half of cocaine was found.

Maddox claims that his counsel failed to investigate the claim that Rush abused the women who testified, and that they testified out of fear.  But Morgan Bennett stated under oath she had never been abused by Rush, contrary to the claims made by Maddox.  Her story was consistent with Rush's.  In fact, Maddox's counsel addressed this very issue when he cross-examined Rush on his various sexual relationships with both Ebberts and with another girlfriend, Latoria Fitzgerald, who also travelled to Atlanta to serve as a courier for Maddox and Rush to transport crack cocaine back to Tennessee [*Id.*, p. 1395-97].   Everything Maddox claimed his counsel did not do, he did.  The Court finds that Maddox's claim that he received ineffective assistance of counsel for the handling of these witnesses and for failure to interview witnesses is without merit.

**e.     Maddox's claim that the jury saw him in shackles.**

Maddox alleges that his counsel failed to object to him being shackled in front of the jury [Doc. 2, p. 18].  The only reference to shackles is on the second day of Maddox testifying.  The following colloquy occurred between Maddox's counsel and the Court:

> MR. PRYOR: I want to make sure that my client is on the stand when the jury comes in.

> THE COURT: Certainly.

> MR. PRYOR:  And that maybe we take a break when his testimony is done.

> THE COURT: Sure.

MR. PRYOR: regret what happened the other day, as far as him having to walk up there in his shackles, but …

THE COURT: Well, I don't think anybody noticed.

MR. PRYOR: Well, I mean, obviously, the Jury has heard several time (sic) that he's in jail anyway, but at any rate, I would prefer if we can at all help it.

[Doc. 677, pg. 2129].  That is the only reference in the entire trial to Maddox being in shackles, and the Court found that the jury did not even notice it.

Maddox cannot show the jury even saw him in any shackles.  When his counsel raised the issue with the Court, the Court was not the least bit concerned because it did not believe that any of the jurors even saw him in shackles.  At trial, no one disagreed with the Court's observation, leaving it unchallenged.  But even if the Court were to assume the jury happened to see him in shackles for a moment during this nearly three-week trial, the Sixth Circuit "long ago concluded that 'a brief and fortuitous [viewing of the defendant in shackles] is not prejudicial and requires an affirmative showing of prejudice by the defendant.'" *Keys v. Booker*, 798 F.3d 442, 455 (6th Cir. 2015) (quoting *Kennedy v. Cardwell*, 487 F.2d 101, 109 (6th Cir.1973)).  Counsel took every step necessary to protect the jury from seeing Maddox in shackles.  Further, considering the overwhelming evidence against Maddox, he cannot show any prejudice by what was at most a fortuitous viewing.  The Court finds this issue is without merit.

**3.    Maddox's claim that the government committed prosecutorial misconduct.**

Maddox claims the government engaged in various acts of prosecutorial misconduct.  He did not appeal the issues he raised in his motion now.  "It is well-established that a § 2255 motion is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quotation marks omitted). Accordingly, the Court will not entertain a claim that could have been raised on direct appeal unless the petitioner shows: "(1) cause and actual prejudice to excuse his

failure to raise the claims previously; or (2) that he is 'actually innocent' of the crime." *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). Maddox did not raise these issues concerning prosecutorial misconduct on appeal. Accordingly, the issue is waived. *Ray*, 721 F.3d at 761. However, the Court will address each of these claims as they are relevant to whether he received the effective assistance of counsel on appeal.

### a.     Maddox's claim that the government elicited false testimony.

Maddox claims the government committed various acts of prosecutorial misconduct through presenting false testimony of some witnesses and not verifying the testimony of other witnesses. "The Supreme Court has long recognized that due process is denied where '[the] state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.'" *Peoples v. Lafler*, 734 F.3d 503, 515 (6th Cir. 2013) (quoting *Brooks v. Tennessee*, 626 F.3d 878, 894 (6th Cir.2010)). To establish a denial of due process by the use of false testimony, the defendant must show "(1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Id.* For testimony to be material, there must be a "reasonable likelihood that it affected the judgment of the jury." *Id.* at 516.

### i.     Trewayne Sanders testimony.

Maddox claims the government attorney knowingly elicited false testimony by calling Trewayne Sanders to testify about a conversation he had with Maddox at a bar in Utica, New York [Doc. 2, p. 18]. Sanders testified that he spoke with Maddox at a bar in Utica, New York sometime in the summer of 2008 when Maddox confessed to him that he trafficked in cocaine. Maddox claims this is false because other witnesses and exhibits "proved Maddox was only in Utica from July to November 2008, which was well after the event allegedly occurred with Sanders." *Id.*

To address this claim, the Court turns to Sanders' testimony. At trial, Sanders testified that he recalled a time seeing Maddox in a bar called the "Backstreet" in Utica, New York, "sometime around the summer of 2008" [Case Number 2:09-CR-045, doc. 677, p. 1879]. Sanders testified that Maddox had offered one of his "associates" to sell some crack cocaine. [*Id.* at 1880]. He claimed that Maddox told him that Maddox was selling crack cocaine in Tennessee and that Maddox invited them to come to Tennessee and sell crack cocaine. [*Id.*, p. 1881-83]. Contrary to Maddox's story that he only dealt in marijuana, Sanders claimed that Maddox's "main drug" was cocaine. [*Id.*, p. 1886].

On cross-examination, however, Maddox's attorney challenged Sanders' story and timeline and managed to obtain several concessions. First, Sanders acknowledged that he never came down to Tennessee to distribute cocaine, questioning whether Maddox ever really made the offer [*Id.*, p. 1898]. Second, Maddox's counsel challenged him on the exact time of this alleged admission. On cross, Sanders admitted that he could not remember when exactly he had this conversation, but identified the summer of 2008, "like May … or June." [*Id.*, p. 1899].

Maddox claims this potentially one-month difference between his being in Utica in July 2008 and Sanders testifying the conversation happened in the summer of 2008, like May or June, warrants a reversal of his conviction. Maddox also raised this same issue in his motion for a new trial where he argued that the government did not "verify [Sanders'] testimony…." [Case Number 2:09-CR-045, doc. 648, p. 1]. The weak link in Maddox's argument is that Sanders was never certain as to the exact time of when this conversation occurred, except that it was sometime in the Summer of 2008. His attorney effectively cross-examined him on this point. By any standard, the differences Maddox identifies are not material. He only points to a minor discrepancy in time. The Sixth Circuit has found that "[w]hen government witnesses present differing testimony, the burden is on the defendants to show that the testimony was actually perjured — mere

inconsistencies in testimony by government witnesses do not establish knowing use of false testimony." *United States v. Fields*, 763 F.3d 443, 461–62 (6th Cir. 2014). Maddox has failed to demonstrate that this minor discrepancy would have affected the jury verdict in his case. The issue is without merit.

### ii. C.J. Warren testimony.

Maddox also contends the government committed misconduct in not corroborating the testimony of C.J. Warren, an inmate at the Washington County jail [Doc. 2, p. 19]. He cites to no authority requiring that. C.J. Warren testified that he met Maddox while he was incarcerated at the Washington County Detention Center and discussed with Maddox his involvement in the distribution of cocaine [Case Number 2:09-CR-045, doc. 677, p. 1084]. He also testified that Maddox said if "Goldie" testified against him, he would "have him killed." [*Id.*, p. 1086]. "Goldie" is a reference to Jamie Rush. Warren's testimony corroborated what other witnesses had said about Maddox's involvement in the distribution of cocaine and his desire to retaliate against Rush for his willingness to testify for law enforcement, corroborating his intent to harm Rush as he indicated in his recorded phone calls.

Warren testified that while he was incarcerated with Maddox, Maddox told him that Maddox could "get 10, 15" kilograms of cocaine at any given time [*Id.*, p. 1091]. Maddox claims that the government should have verified this information, but cites to no authority requiring it to do so. He raised this same issue in his motion for a new trial, claiming that "[t]he prosecution failed to corroborate [Warren's] testimony about Defendant, and, in fact, his testimony was contradicted by the government's other witnesses who actually knew Defendant (e.g., Jamie Rush and Hiram McGirt)." [Case Number 2:09-CR-045, doc. 648, p. 2].

It is important to note that Warren's testimony only corroborated the testimony of the numerous witnesses who testified against Maddox. His testimony was not the only evidence of

Maddox's participation in the criminal offenses for which he was convicted. Indeed, Maddox's counsel effectively handled Warren's testimony, cross-examining Warren about his bias, his past record, and about the benefits he could obtain if the government were to file a motion for downward departure [Case Number 2:09-CR-045, doc. 677, p. 1096-97]. Maddox cannot demonstrate any prejudice in the way his counsel handled Warren. This issue is without merit.

### iii. Shawn McGirt testimony.

Maddox claims that the government committed prosecutorial misconduct when it asked McGirt about "buying" 500 grams of crack cocaine from Maddox [Doc. 17, p. 4]. In contrast, Agent Vicchio testified that Maddox "fronted" the drugs and that McGirt did not purchase them. This distinction is not enough to make a difference in this case. "Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). Again, Maddox does not demonstrate that the distinction between "fronting" and "buying" would have made any difference to the jury's verdict. It is a distinction without a difference. Under either scenario, whether Maddox "fronted" the cocaine or "sold" the cocaine, Maddox would still be involved in the distribution of cocaine as charged in the indictment. He has not shown this to be material or prejudicial. *See, e.g., Lafler*, 734 F.3d at 515.

### b. Maddox's claim that the government failed to provide Jencks Act and *Brady/Giglio* material.

Maddox claims the government called several witnesses to testify but failed to supply him with Jencks Act material and material that should have been disclosed pursuant to *Brady/Giglio*. In support of his claim, Maddox notes the government interviewed Jamie Rush, who testified against Maddox, about 15 times but the government only supplied Maddox with one DEA-6 Report. Agent Vicchio testified that he spoke with Rush several times, but had prepared "a Report

of Investigation" only concerning the initial interview [Case Number 2:09-CR-045, doc. 677, p. 2454-55].    Maddox claims that the government provided no other DEA-6 reports for the other witnesses either [Doc. 2, p. 20].    He contends "[i]t is hard to imagine that the government would not memorialize in writing what these witnesses said during their interviews with agents."    [*Id.*, p. 20].

To be sure, the government failed to disclose other DEA-6 reports, which it discovered and disclosed after the trial.    The government notes that it disclosed Agent Vicchio's initial report to Maddox and his counsel.    [Doc. 6, p. 17].    Indeed, counsel cross-examined Agent Vicchio about that report [Case Number 2:09-CR-045, doc. 677, p. 2454].    However, the government, after the trial, discovered other DEA-6 reports it had failed to disclose.    Once he discovered the existence of other undisclosed DEA-6 reports, Maddox asked for a new trial [Case Number 2:09-CR-045, doc. 648, p. 4-5].    In addressing this issue, the Court reviewed each of the six reports, which the government had not disclosed, individually and collectively, and made the following findings:

> The prosecution's representation that the nondisclosure was inadvertent is believed. To the extent that any of the forms were Jencks material as to Agent Vicchio, the court does not find that the defendant was prejudiced by the nondisclosure of their contents.    *See, e.g., United States v. DeFranco*, 30 F.3d. 664, 667 (6th Cir. 1994). The Court similarly finds nothing exculpatory or inconsistent in the reports that would warrant *Brady* or *Giglio* relief.    Further, the defendant has failed to meet his burden of proving that any other Jencks Act material exists … or that he timely moved for such material…. Having reviewed the six investigative reports individually and collectively, the court concludes that the defendant's Jencks, *Brady*, and *Giglio* arguments are without merit or substance.

[Case Number 2:09-CR-045, doc. 702, p. 8-9].    The Court reviewed these very reports and found "nothing exculpatory or inconsistent in the reports that would warrant *Brady* or *Giglio* relief."    [*Id.*, p. 8].    Maddox cannot show he was prejudiced as a result of the government's failure to turn over the DEA-6 reports.    The Court finds this issue is without merit.

### c. Maddox's claim that the government made improper remarks during closing argument.

Maddox claims that during closing argument, the government "inappropriately denigrated defense counsel by stating that 'desperate defense lawyers' claim the prosecution witnesses are lying…." [Doc. 2, p. 21]. Maddox claims that the term "desperate defense lawyers" was improper and so flagrant to warrant a reversal in this case.

This issue was raised issue in the motion for a new trial, but the Court noted that the actual language used by the government was "desperation by Defense Attorneys." [Case Number 2:09-CR-045, doc. 677, p. 2520]. The Court, in denying Maddox's motion for a new trial, concluded that the comment made by the government attorney fell "far short of the necessary standard for relief." [*Id.*, doc. 702, p. 7]. The remark was "in response to attacks on the veracity of prosecution witnesses" and not personal attacks on the ethics of opposing counsel. *Id.* The Court has already found that the remarks did not rise to the level to warrant a new trial. The Court sees no reason to deviate from that conclusion. The evidence in this case was overwhelming against Maddox, and Maddox has not demonstrated that this isolated remark prejudiced him at all.

### 4. Maddox's claim that he received ineffective assistance of counsel on appeal.

Maddox contends that he received ineffective assistance of counsel on appeal. He claims here that his counsel should have raised "stronger meritorious issues" than the ones he raised. [Doc. 2, p. 21]. To show ineffective assistance by appellate counsel, Maddox must show that his attorney's performance fell below an objective standard of reasonableness, and that this deficient performance prejudiced him, resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687-88, (1984). When assessing appellate counsel's performance, courts recognize that appellate counsel is not required to "raise every non-frivolous issue" on appeal. *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Appellate counsel may

reasonably decide that selecting only some of the possible non-frivolous claims will "maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, (2000). Thus, appellate counsel's judgment is "presumed to be effective unless the ignored issues are clearly stronger than those presented." *Sullivan v. United States*, 587 F. App'x 935, 944 (6th Cir. 2014). The Court will now address whether the ignored issues Maddox raises now are "clearly stronger than those presented." *Id.*

    **a.**     **Maddox's claim his counsel should have raised sufficiency of the evidence issue on appeal.**

Maddox claims that his appellate counsel should have challenged the sufficiency of the evidence for each conviction. In evaluating a sufficiency of the evidence claim, the Court views the evidence in the light most favorable to the jury verdict. *See, e.g., Jackson v. Virginia*, 443 U.S. 307, 318 (1979). In assessing the evidence, the Court is "bound to make all reasonable inferences and credibility choices in support of the jury's verdict." *United States v. Newsom*, 452 F.3d 593, 608 (6th Cir. 2006).

Concerning the drug conspiracy, aiding and abetting and money laundering counts (that is, counts 1-6 and 13), Maddox claims that the "content of the conversations presented by the [numerous audio recordings] were all completely ambiguous as to the true meaning of what [Maddox] and the other codefendants were referencing." [Doc. 2, p. 22]. Maddox claims that he explained to the jury that "all of the conversations and text messages … were in relation to marijuana transactions" and not cocaine. *Id.* As to the possession of ammunition by a convicted felon count (count 16), Maddox contends that the evidence was insufficient because he claims that Jamie Rush "took responsibility for the ammunition in question." *Id.* He claims that it was improper for the government to present Exhibits 47 and 49 "as having been found in Maddox's

room when said exhibits were not found at his residence."[6]  [Doc. 2, p. 22].  Regarding counts 18,

19 and 20, (intimidating a witness and conspiracy to intimidate a witness), Maddox claims that he

made those threatening statements to Rush in April 2010, before he knew Rush was cooperating.

He claims that the "impetus for difficulties between Maddox and Rush was the assault on

Bryant…."  [*Id.*, p. 23].  He claims that his "anger" toward Rush had nothing to do with Rush's

cooperation.  *Id.*

In this case, the Court has the benefit of the Sixth Circuit addressing the sufficiency of the

evidence issue for the other co-defendants.  There, the Sixth Circuit found the evidence sufficient

to support the convictions of all of Maddox's co-defendants.  The Court notes that the evidence

against Maddox was even more extensive than against his co-defendants.

The Court also has the benefit of the its previous analysis of this issue. Maddox raised this

same sufficiency of the evidence challenge previously.  The Court held that "a rational jury could

easily have found beyond a reasonable doubt all of the elements of the crimes charged."  [Case

Number 2:09-CR-045, doc. 702, p. 4].   In addressing Maddox's arguments as to each of the

conspiracy counts, (Counts 1, 3, 5, and 6), the Court found as follows:

> Overwhelming evidence was presented regarding the defendant's involvement with
> cocaine and cocaine base.  As one example, a kilo and a half of cocaine was seized
> from a vehicle parked in his driveway.  Pertaining to that seizure, the government
> introduced a letter from the defendant stating in material part, "[N]ow I got to work
> to fight distributing over five kilos, which is a fifty/fifty shot, considering we only
> got caught with one and a half."

[*Id.*, p. 5].  The Court finds the evidence was overwhelming regarding Maddox's participation in

each of these conspiracies.

---

[6] The exhibit list identifies exhibit 47 as "assorted ammunition with sock" found in Maddox's
bedroom, and exhibit 49 as "1 magazine (Maddox bedroom)." [Case Number 2:09-CR-045, doc.
633, p. 4].

The same is true regarding Maddox's aiding and abetting the distribution of marijuana and cocaine. As to counts two, four, and thirteen, the Court noted the government had to prove (1) an act by defendant that contributes to the commission of the crime, and (2) and intention to aid in the commission of the crime. The Court found that the evidence was sufficient to support convictions for those counts. Based on the testimony of the numerous witnesses regarding Maddox's extensive involvement in the distribution of cocaine and marijuana, it properly found the evidence satisfied the elements of the offense. Maddox was routinely working with others to obtain both cocaine and marijuana for further distribution. The government proved by testimony of numerous witnesses that Maddox routinely was aiding and abetting others in the distribution of cocaine and marijuana.[7]

Concerning his possession of ammunition in count 16, Maddox argues that co-defendant Rush signed a statement in which he admitted the ammunition was his, not Maddox's. As the Court noted, to convict, the government had to prove a prior felony conviction followed by knowing possession of ammunition that had crossed state lines prior to Maddox's possession. The Court noted the evidence was that "ammunition was found in the defendant's bedroom and a larger quantity was found in a common area of the residence." [Case Number 2:09-CR-045, doc. 702, p. 5]. The Court also noted that Rush explained why he claimed ownership of the ammunition. Rush "testified that he signed the statement at the defendant's request and that the statement was not true." *Id.* at 6. The Court found that the jury could have found that Maddox actually and/or constructively possessed the ammunition for which he was convicted. *Id.* at 6. This issue has no merit.

---

[7] The Sixth Circuit summarized the extensive evidence against Maddox in its opinion. *See United States v. Miller*, 562 F. App'x 272 (6th Cir. 2014). This Court sees no reason to repeat that summary again here.

Concerning counts 18-20, Maddox claimed that he threatened Rush for personal reasons not related to his cooperation. The Court noted that for a conviction for count 18, the government had to prove the defendant knowingly threatened to engage in conduct which would cause bodily injury to codefendant Jamie Rush, and that the defendant acted with the specific intent to retaliate against Rush because of information given by Rush to law enforcement relating to the commission or possible commission of federal crimes. As to count 19 and 20, the government had to prove the defendant knowingly used intimidation and threatened Rush with the intent to influence or prevent his testimony at trial.

The Court summarized the evidence concerning these counts as follows:

> [I]in a threatening voice mail upon which these counts are based, the defendant called Rush a "f***ing rat b*tch." Then, in a phone call to codefendant Ronnie Cooper immediately after leaving the message, the defendant states, "my lawyer like I don't see why they gave son that type of deal" and, "I think son co-oping man." Based on this evidence, a reasonable jury could have concluded beyond a reasonable doubt that the defendant's threats were based on his knowledge of Rush's cooperation with the government.

[*Id.*, p. 6].

The standard for each of these claims is whether Maddox's appellate counsel was ineffective for not raising these issues. The evidence to convict for each of these counts was overwhelming. Maddox cannot show that these issues were "clearly stronger" than the issues his counsel raised in the Sixth Circuit. *Sullivan*, 587 F. App'x at 944. This issue is without merit.

**b.    Maddox's claim that his appellate counsel should have appealed prosecutorial misconduct.**

Maddox contends that his appellate counsel should have raised the issues of prosecutorial misconduct that Maddox claims his trial attorney failed to object to. He claims that the result of the case would have been different had appellate counsel done so. [Doc. 2, p. 23]. The Court has

already addressed this issue in analyzing trial counsel's effectiveness. As it found no issue there, the Court finds Maddox cannot show that this issue was "clearly stronger" than the issues his counsel raised on appeal. This issue is without merit.

### c. Maddox's claim his appellate counsel should have filed a Rule 28(j).

Maddox claims that while his appeal was pending, the Attorney General Eric Holder released a Memorandum pertaining to when government prosecutors should file enhancements under 21 U.S.C. § 851. Without explanation, Maddox claims his attorney should have filed a Rule 28(j) supplement to his appeal. Rule 28(j) provides that "[i]f pertinent and significant authorities come to a party's attention after the party's brief has been filed … a party may promptly advise the circuit clerk by letter…." Fed. R. App. P. 28(j).

This issue is without merit. As the government points out, the memorandum creates no privately enforceable rights. *See United States v. $110,873.00 in U.S. Currency*, 159 F. App'x 649, 653 (6th Cir. 2005) ("Department of Justice Policy directives are not binding and do not create privately enforceable rights."). The memorandum even provides that "[t]he policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding." *United States v. Nagy,* 760 F.3d 485, 490 (6th Cir. 2014) (internal marks and quotations omitted). In short, Maddox has no cognizable claim relating to the Justice Department memorandum.

## B. Maddox's "Supplement in support of motion under 28 U.S.C. § 2255" [Docs. 7, 8].

On August 16, 2016, Maddox filed a supplement in which he reasserts his prior argument that the government failed to provide Jencks Act and *Brady/Giglio* material [Doc. 7, p. 1]. The Court has already addressed this issue. Maddox then titles a section of the supplement "Newly Discovered Evidence" [*Id.*, p. 3]. For this claim he states the following:

A report based on an interview of Jamie Rush by Ronnie Cooper's defense team revealed that Rush had in fact told the government that Cooper (an alleged co-conspirator of Maddox) had nothing to do with the conspiracy alleged in U.S. v. Maddox. This exculpatory evidence was not included in Rush's DEA 6 or anywhere else in the *Brady* material.

[*Id.*, p. 3]. Continuing with the "newly discovered evidence" argument, Maddox claims that "Bill Mitchell, a former Johnson City, TN drug task force officer" conspired with FBI agents and others to investigate Maddox. [Doc. 8, p. 2]. Here he claims that Mitchell testified that he monitored a controlled buy from Lee Carr, but that no cocaine was introduced at the trial. Maddox also alleged that Mitchell lost his job "due to drug use." [*Id.*, p. 2].

To succeed on a newly discovered factual evidence, Maddox must show that:

(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce acquittal.

*United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991) (citing *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986)). Maddox has failed to demonstrate that this new evidence would have changed the outcome of the trial in the least bit. The evidence was overwhelming and independent of this one controlled buy from a co-defendant. Moreover, Rush's statement that Cooper was not involved in the conspiracy has nothing to do with Maddox. It deals with Cooper. Maddox fails to connect how a potentially exculpatory statement that has nothing to do with him would be material and likely produce an acquittal in his case. Because he has failed to show the evidence material, this claim is without merit.

**C.**     **Maddox's supplement that alleges he should not have been sentenced as a career offender under the guidelines and enhanced under the statute [Doc. 11].**

On December 5, 2016, Maddox claimed that he should not have been considered a career offender or sentenced to life in prison because "[h]is prior conviction of attempted criminal

possession of a controlled substance in the 5th degree … is not a controlled substance offense under the guidelines." [Doc. 11, p. 4]. He argues that he received ineffective assistance of counsel because the attorney "failed to investigate the application state and federal laws … with regard to his challenge of Maddox's prior convictions." [*Id.*, p. 7]. He claims that had his counsel challenged his prior convictions, he "would not have been charged as a career offense (sic)" and "a plea-bargain would have been favorable as opposed to a trial", and he would have only been facing 240-262 months of imprisonment. [*Id.*, p. 8].

Maddox did not raise this issue on appeal. Thus, it is waived. *See, e.g., Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). He also did not raise it in his initial motion to vacate and did not seek permission to amend his motion. Thus, it is not properly before the Court and will be denied for that reason as well.

Notwithstanding that, the Court will address the issue. Maddox was not sentenced as a career offender, but was sentenced under the enhancement provisions of 21 U.S.C. § 841(b)(1)(A). The United States filed an Information to establish his prior convictions under 21 U.S.C. § 851, subjecting Maddox to the statutorily enhanced punishment of life [Case Number 2:09-CR-045, doc. 823]; *see* 21 U.S.C. § 841(b)(1)(A) ("If any person commits such a violation of this subparagraph … after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment…."). At the time Maddox was sentenced, a felony drug offense was an "offense that is punishable by imprisonment for more than one year under any law … of a State … that prohibits or restricts conduct relating to narcotic drugs…." 21 U.S.C. § 802(44) (2011). The Information identified two prior felony drug felony convictions in Maddox's criminal history: (1) on February 28, 1995, Maddox was convicted of the "felony offense of Criminal Possession of a Controlled Substance 5th Degree, which is a felony

punishable by imprisonment for more than one year;" and (2) on May 24, 2001, Maddox was convicted of "Attempted Criminal Possession of a Controlled Substance in the Fifth Degree, which is a felony punishable by imprisonment for more than one year" [Case Number 2:09-CR-045, doc. 823, p. 1].

Maddox objected to the use of these two felony drug convictions to enhance his sentence [*Id.*, doc. 819]. At sentencing, the Court asked Maddox if he affirmed the two prior convictions. [*Id.*, doc. 875, p. 9-10]. In response, Maddox indicated that he did "affirm the convictions." [*Id.*, p. 10]. Because of Maddox's two prior felony drug convictions, he was subject to the mandatory term of life imprisonment. Moreover, the Sixth Circuit rejected Maddox's challenge to his life sentence. *See, e.g., United States v. Miller*, 562 F. App'x 272, 312 (6th Cir. 2014) ("[T]his Court has repeatedly upheld the mandatory minimum provisions that Maddox now challenges."). Accordingly, the District Court sentenced him to a term of life imprisonment as to counts 1, 2, and 5, and 120 months on counts 3, 4, 6, 13, 16, 18, 19, and 20 [Case Number 2:09-CR-045, doc. 875, p. 10]. Maddox's argument that he should not have been sentenced as a career offender under the guidelines is without merit as he was sentenced under 21 U.S.C. § 841(b)(1)(A).[8]

### D. Maddox's supplement brief [Doc. 17].

In this brief, Maddox continues with the argument that the prosecutor presented false testimony [Doc. 17, p. 2]. He attempts to identify inconsistencies between what McGirt reportedly said in DEA-6 report and what he testified to at trial. As the Court has already discussed, Maddox cannot show that any of the inconsistencies he identified would make any

---

[8] It appears his argument would otherwise be without merit because the Second Circuit permitted a conviction for attempted criminal possession of a controlled substance in the fifth degree, a class D felony under New York state law to be used to enhance a defendant's sentence under 21 U.S.C. § 851. *See, e.g., United States v. Jones*, 571 F. App'x 16, 18 (2d Cir. 2014).

difference in the result of this case. For example, he makes the point that McGirt said Maddox had "consigned" to him four ounces of crack cocaine, but testified that Maddox gave him 500 grams of crack. He makes the distinction between being fronted the drugs and purchasing the drugs. A distinction without a difference. In any event, trial counsel cross-examined Agent Vicchio about these inconsistencies. The Court has already discussed this issue at length and finds it without merit.

**E.      Maddox's supplemental brief [Doc. 18].**

Maddox contends that the cocaine discovered in the Toyota on May 7, 2009 should have been suppressed. Because he did not appeal that issue, it is waived. *See Ray*, 721 F.3d at 761. He does not contend that his appellate counsel should have raised it on appeal either.

That notwithstanding, the Court finds that this issue lacks merit. Maddox claims that he received ineffective assistance of counsel when his attorney did not seek to suppress the kilogram and a half of cocaine found in the Toyota in his driveway. [Doc. 18, p. 1-2]. He claims that the United States Supreme Court holding in *Byrd v. United States*, 138 S. Ct. 1518 (2018) gives him that relief. In support of this claim, Maddox argues that the Court found that he had no right to challenge the search of the vehicle, but that under *Byrd*, he would have. First, the Court did not hold that. Contrary to Maddox's argument, his attorney filed a Motion to Suppress the evidence discovered as a result of the searches of Maddox's property, including that of the kilogram and a half of cocaine and evidence obtained as a result of wiretaps and electronic interceptions [Case Number 2:09-CR-045, doc. 253]. After a hearing, the magistrate judge recommended the motions be denied [*Id.*, docs. 315, 323, 328], to which Maddox objected. The Court accepted and adopted the magistrate judge's recommendation [*Id.*, docs. 429, 455]. Maddox's claim that his counsel failed to challenge the search is without merit.

Second, in *Byrd,* the Supreme Court emphasized the importance of examining "whether the person claiming the constitutional violation had a legitimate expectation of privacy in the premises searched." *Id.* at 1526. Unlike in *Byrd*, Maddox claims he had no interest in the Toyota. He presented the testimony of Morgan Bennett who claimed that she, not Maddox, had rented the Toyota in which the cocaine was found. Indeed, Maddox never claimed that he had any connection with the vehicle at all. In fact, on direct, he testified as follows:

> Q.     Okay. The, you're familiar with the white Avalon that was searched in front of your house?
>
> A.     I seen it.
>
> Q.     Okay, and you're familiar with the fact that there was a bag in the trunk of that that had some cocaine and some marijuana. Do you know how the marijuana got in that bag?
>
> A.     I'm not sure, because I wasn't with them.
>
> Q.     Okay. What about the cocaine?
>
> A.     I wasn't with them.

[Case Number 2:09-CR-045, doc. 664, p. 48-49]. Thus, the argument that *Byrd* gives him any relief is misplaced.

Maddox also filed another amendment, purportedly amending this supplement, claiming his attorney should have challenged the admissibility of the recordings obtained by electronic surveillance/wiretaps [Doc. 19]. Pretrial, counsel actually filed a motion to suppress this very evidence, and the Court denied the motion [Case Number 2:09-CR-045, docs. 257, 455]. This issue is without merit.

## IV. CONCLUSION

The Court finds that Defendant has failed to demonstrate that he is entitled to relief under § 2255 and his motion to vacate, set aside or correct the sentence [Doc. 1] will be DENIED. This action will be DISMISSED. The Court now must consider whether to issue a certificate of appealability (COA) should the Defendant file a notice of appeal, since he may not appeal a final order in a § 2255 case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). Issuance of a COA depends on whether Defendant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court will CERTIFY that any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will DENY Defendant leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Defendant having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability SHALL NOT ISSUE. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

ENTER:


_____
s/ Leon Jordan
United States District Judge